UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** *CR 14-251 JRT/JSM* |
| | ) | |
| Plaintiff, | ) | 18 U.S.C. § 1341 |
| | ) | 18 U.S.C. § 1343 |
| v. | ) | 18 U.S.C. § 1956(a)(1)(B)(i) |
| | ) | 18 U.S.C. § 1957 |
| SEAN M. MEADOWS, | ) | |
| | ) | |
| Defendant. | ) | |

THE UNITED STATES GRAND JURY CHARGES:

## INTRODUCTION

At times relevant to this Indictment:

1.      Sean Michael Meadows ("MEADOWS" or "defendant") was a resident of the State of Minnesota.

2.      The defendant was a licensed insurance producer from about February 1997 until April 2014.   Defendant was registered as securities broker from about February 1997 through July 2006.

3.      Meadows Financial Group LLC, ("MFG") was a business owned and operated by the defendant, through which the defendant provided financial planning and asset management services, and sold insurance and investment products such as annuities, to clients in Minnesota, Indiana, Arizona and elsewhere.

SCANNED
AUG 0 5 2014
U.S. DISTRICT COURT ST. PAUL

U.S. v. Sean M. Meadows

## SCHEME AND ARTIFICE TO DEFRAUD

4.      Beginning no later than in or about 2007 and continuing at least until in or

about April 2014, in the State and District of Minnesota, the defendant,

### SEAN M. MEADOWS,

did knowingly devise and participate in a scheme and artifice to defraud and to obtain

money and property by means of materially false and fraudulent pretenses, representations,

promises and material omissions, and for the purpose of executing such scheme and

artifice, and attempting to do so: (a) caused the sending, delivering and receipt of various

matters and things by United States Postal Service and private and commercial interstate

carrier; and (b) caused the transmission in interstate commerce, by means of wire

communications, of certain writings, signs, signals, pictures and sounds.

5.      Beginning no later than in or about 2007 and continuing through at least

April 2014, the defendant fraudulently solicited money from investors through promises

that he would use the invested funds to purchase bonds or other legitimate investments

when, in fact, the defendant intended to and did use the invested funds to pay personal

expenses and make Ponzi-type payments to other investors.

6.      It was part of the scheme that beginning no later than 2007 and continuing

until about April 2014, defendant met with numerous clients and potential investors, and

solicited funds for an investment vehicle (typically described by the defendant as a bond)

to be held by MFG.   In total, the defendant raised at least $13,000,000 from more than 50

investors for his purported MFG investment vehicle.   The defendant falsely claimed that he would (and did) use the investors' funds to purchase bonds, real estate or other legitimate investments.   In fact, the defendant did not intend to invest the money raised from investors, but instead intended to and did use the investors' money for his own personal and business expenses.

7.     It was further part of the scheme that in order to lure the potential investors into taking money out of other legitimate investments—such as annuities and retirement accounts—and investing it with MFG, the defendant deceptively promised a high rate of return of up to 10% annually when, in fact and as defendant knew, the defendant did not invest his clients' money and therefore had no legitimate profits with which to make interest payments.

8.     It was further part of the scheme that when soliciting investments with MFG, defendant told investors that the investment was safe and liquid.   In fact and as defendant knew, the investment was neither safe nor liquid because defendant used the investors' money for his own personal or business purposes, and to the extent defendant repaid investors during the scheme it was by soliciting money from new investors.

9.     It was further part of the scheme that at various times between 2007 and April 2014, when confronted by investors regarding the status of their investments, the defendant lied to and attempted to lull investors into believing their investments were safe by falsely and deceptively claiming, among other things: (a) that the MFG investments

3

CASE 0:14-cr-00251-SRN-JSM   Document 1   Filed 08/05/14   Page 4 of 11

U.S. v. Sean M. Meadows

existed and continued to be profitable; (b) that investors could expect to receive a return of

their principal when needed; and (c) that any delays in the return of the investments were

caused by factors unrelated to the defendant's unauthorized use of the investments funds.

10.     It was further part of the scheme that at various times between 2007 and

April 2014, in order to lull investors into believing that their investments were performing,

the defendant used money that he raised from new investments to make purported interest

payments to previous investors.

11.     It was further part of the scheme that, through the means described above, the

defendant fraudulently obtained at least $13,000,000 from investors and caused investors

to lose more than $9,000,000.  Defendant used the proceeds of the fraudulent scheme to,

among other things: pay personal expenses; make "salary" payments to himself; make

payments to his spouse; purchase at least one vehicle for himself; pay expenses related to

his personal investment properties; pay personal credit card bills; travel to Las Vegas and

elsewhere; gamble at casinos and online; make numerous payments totaling over $100,000

to adult entertainment establishments in Minnesota and Las Vegas; and make Ponzi-type

payments to previous investors.

## COUNTS 1-3
(Mail Fraud)
18 U.S.C. § 1341

12.     The allegations contained in paragraphs 1 through 11 of this Indictment are

re-alleged as if stated in full herein.

4

<u>U.S. v. Sean M. Meadows</u>

    13.    On or about the following dates, in the State and District of Minnesota and

elsewhere, the defendant,

**SEAN M. MEADOWS,**

having devised and intending to devise the scheme and artifice described above, caused to

be sent, delivered, and moved by the United States Postal Service and private and

commercial interstate carrier various mailings, items and things for the purpose of

executing and attempting to execute such scheme and artifice:

| COUNT | DATE (on or about) | MAILING DETAILS |
|---|---|---|
| 1 | October 13, 2009 | Envelope sent via U.S.P.S. from Allianz to J.C. containing a check in the amount of approximately $53,943.25, representing the proceeds of an annuity investment surrendered by J.C. in order to make an investment with MFG |
| 2 | August 6, 2013 | Envelope sent via UPS from Allianz to W.C. containing a check in the amount of approximately $50,448.12, representing the proceeds of an annuity investment surrendered by W.C. in order to make an investment with MFG |
| 3 | April 30, 2014 | Envelope sent via U.S.P.S. from the defendant to E.K. containing a check in the amount of approximately $10,000.00, representing a supposed payment by the defendant to E.K. related to E.K.'s investment with MFG |

    All in violation of Title 18, United States Code, Section 1341.

5

## COUNTS 4-10
(Wire Fraud)
18 U.S.C. § 1343

14.     The allegations contained in paragraphs 1 through 11 of this Indictment are re-alleged as if stated in full herein.

15.     On or about the following dates, in the State and District of Minnesota, the defendant,

### SEAN M. MEADOWS,

having devised and intending to devise the scheme and artifice described above, caused to be transmitted by means of wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds for the purpose of executing and attempting to execute such scheme and artifice:

| COUNT | DATE (on or about) | WIRE DETAILS |
|---|---|---|
| 4 | July 22, 2010 | Wire transfer in the amount of approximately $125,000.00 sent from Allianz to L.L., representing proceeds of liquidated annuity investment |
| 5 | October 27, 2011 | Wire transfer in the amount of approximately $557,011.89 sent from Allianz to J.M.E., representing proceeds of liquidated annuity investment |
| 6 | December 6, 2012 | Wire transfer in the amount of approximately $48,559.20 sent from Allianz to B.W., representing proceeds of liquidated annuity investment |

U.S. v. Sean M. Meadows

| 7 | August 1, 2013 | Facsimile sent from FedEx Office in Scottsdale, AZ, to Allianz in Minneapolis, MN, containing surrender form for W.C. |
|---|---|---|
| 8 | September 18, 2013 | Wire transfer in the amount of approximately $450,000.00 sent from Allianz to B.H., representing proceeds of liquidated annuity investment |
| 9 | January 28, 2014 | Email from the defendant to D.A. in which the defendant falsely and misleadingly informed D.A. that the money D.A. invested with MFG was "invested on 12/2/13" and "[t]he bond was issued in a $10 M contract with a rating of AAA / Aaa, Stable with a maturity of 9/17/23 and a yield of 9.44%." |
| 10 | February 5, 2014 | Wire transfer in the amount of approximately $70,000.00 sent from Allianz to R.B., representing proceeds of liquidated annuity investment |

All in violation of Title 18, United States Code, Section 1343.

## COUNT 11
### (Money Laundering)
### 18 U.S.C. § 1956(a)(1)(B)(i)

16.     The allegations contained in paragraphs 1 through 11 of this Indictment are re-alleged as if stated in full herein.

17.     On or about September 26, 2013, in the State and District of Minnesota and elsewhere, the defendant,

**SEAN M. MEADOWS,**

knowingly and willfully conducted and caused to be conducted a financial transaction affecting interstate commerce, namely the negotiation of a cashier's check obtained with

7

funds from MFG's bank account in the amount of $502,994.35, representing a payment to victim-investor K.P., knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, namely mail fraud in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, and which was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the unlawful activity.

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT 12
(Transaction Involving Fraud Proceeds)
18 U.S.C. § 1957

18.     The allegations contained in paragraphs 1 through 11 of this Indictment are re-alleged as if stated in full herein.

19.     On or about August 30, 2013, in the State and District of Minnesota and elsewhere, the defendant,

**SEAN M. MEADOWS,**

knowingly engaged and attempted to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, namely the negotiation of a cashier's check obtained with funds from a MFG bank account in the amount of $32,755.25 to Merit Chevrolet, such property having been derived from specified unlawful activities, that is,

8

U.S. v. Sean M. Meadows

mail fraud in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATIONS

20.     Counts 1-12 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

21.     As the result of the offenses alleged in Count 1-10 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations alleged in Count 1-10 of this Indictment.  The property to be forfeited includes, but is not limited to, the following property:

    a.    2008 Deluxe 220 Palm Beach boat and accessories purchased on July 7, 2008, from Little Crow Sports Center;

    b.    Rolex watch and Panerai 112 watch purchased on February 14, 2014, from Wixon Jewelers;

    c.    The real property and premises located at 973 Payne Avenue, St. Paul, Minnesota; and

9

     d.     The real property and premises located at 15522 NE 49th Avenue, Atwater, Minnesota.

22.     As a result of the offenses alleged in Counts 11-12 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in said money laundering and transaction involving fraud proceeds violations and all property traceable to such property.

23.     If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and by Title 18, United States Code, Section 982(b)(1). The property subject to forfeiture includes, but is not limited to the following:

     a.     Rolex Men's Watch, Oyster Milgauss;

     b.     Rolex Men's Watch, Submariner Crown 2004;

     c.     The real property and premises located at 6859 Sand Ridge Road, Eden Prairie, Minnesota;

     d.     The real property and premises located at 15522 NE 49th Avenue, Atwater, Minnesota;

     e.     The real property and premises located at 44 Litchfield Street, St. Paul, Minnesota;

CASE 0:14-cr-00251-SRN-JSM   Document 1   Filed 08/05/14   Page 11 of 11

U.S. v. Sean M. Meadows

f.    The real property and premises located at 5452 Blaisdell Avenue South, Minneapolis, Minnesota;

g.    The real property and premises located at 973 Payne Avenue, St. Paul, Minnesota;

h.    The real property and premises located at N7410 State Road 65, River Falls, Wisconsin;

i.    The real property and premises located at 4785 Peggy Lane, White Bear Lake, Minnesota;

j.    The real property and premises located at 2174 Centerview Lane, Mound, Minnesota; and

k.    1968 Chevy Camaro VIN 123378N349158.


A TRUE BILL


_____     _____
UNITED STATES ATTORNEY       FOREPERSON


11