**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Sean M. Meadows,<br><br>　　　　　Defendant. | Case No. 14-cr-251 (SRN/JSM)<br><br><br><br>**ORDER** |

Benjamin F. Langner and Melinda A. Williams, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Mark D. Larsen, Lindquist & Vennum PLLP, 80 South 8th Street, Suite 4200, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.　INTRODUCTION

This matter is before the Court on Defendant's Appeal [Doc. No. 54] (hereinafter "Defendant's Objections"[1]) of Magistrate Judge Janie S. Mayeron's October 10, 2014 Order [Doc. No. 51]. Defendant objects to two of Magistrate Judge Mayeron's findings. First, he objects to the portion of the Order "denying Defendant's Pretrial Motion to Compel Attorney for the Government to Disclose Evidence Favorable to Defendant [Doc. No. 21]." (Def.'s Objs. at 1 [Doc. No. 54].) Second, Defendant objects to the portion of the Order "denying in part Defendant's Pretrial Motion for Discovery of Expert Under

---

[1]　Pursuant to D. Minn. LR 72.2(a)(1), "[a] party may file and serve objections to the [magistrate judge's] order" on a nondispositive matter. Therefore, throughout this Order the Court refers to Defendant's Appeal [Doc. No. 54] as his Objections.

[Federal Criminal Procedure] Rule 16(a)(1)(G) [Doc. No. 23]." (Id.)  As set forth below, the Court overrules Defendant's Objections, denies Defendant's appeal, and affirms the magistrate judge's October 10, 2014 Order.

## II.   BACKGROUND

The Government alleges that Defendant Sean M. Meadows is guilty of mail fraud, wire fraud, money laundering, and transactions involving fraud proceeds.  (See Indictment at 4-9 [Doc. No. 1].)  In short, Meadows is charged with running a Ponzi financial scheme, in which he "fraudulently solicited money from investors through promises that he would use the invested funds to purchase bonds or other legitimate investments when, in fact, the defendant intended to and did use the invested funds to pay personal expenses and make Ponzi-type payments to other investors." (Id. ¶ 5.)

According to the Indictment, one way Meadows solicited funds was by raising money for a supposed investment vehicle held by MFG.  (Id. ¶ 6.)  Meadows allegedly "raised at least $13,000,000 from more than 50 investors for his purported MFG investment vehicle." (Id.)  Although Defendant allegedly initially raised $13,000,000, the Government contends that Meadows caused investors to lose closer to $9,000,000. (Id. ¶ 11.)  During the hearing before Magistrate Judge Mayeron, the Government stated that "the loss figures are merely a product of looking at what the victims invested with Mr. Meadows and totaling those figures up." (Hr'g Tr. at 19:4-6, Oct. 6, 2014 [Doc. No. 54-1].)

In both of Defendant's Motions, which are currently at issue, Meadows seeks the same underlying information.  In Defendant's Motion to Compel Attorney for the Government to Disclose Evidence Favorable to Defendant, Meadows seeks to compel the

Government to disclose "[a]ll analyses of banking and other financial institution records." (Def.'s Mot. to Compel Attorney at 1 [Doc. No. 21].)  In Defendant's Pretrial Motion for Discovery of Expert Under Rule 16(a)(1)(G), Meadows seeks to compel the Government to disclose a report and/or analyses substantiating the Government's claim that Meadows caused investors to lose more than $9,000,000. (Def.'s Mot. for Discovery of Expert at 1 [Doc. No. 23].)  In sum, Defendant seeks documentation that substantiates (1) the number of alleged victims, and (2) the Government's approximate $9,000,000 loss calculation.

Magistrate Judge Mayeron held that Defendant's Motion to Compel Attorney for the Government to Disclose Evidence Favorable to Defendant [Doc. No. 21] was "denied as moot based on the representations of the Government in its written response [Doc. No. 34] to defendant's pretrial motions and the representations of defendant's counsel at the hearing on the pretrial motions." (10/10/14 MJ Order at 3 [Doc. No. 51].)  Similarly, the magistrate judge held that Defendant's Pretrial Motion for Discovery of Expert Under Rule 16(a)(1)(G) [Doc. No. 23] was denied, insofar as the Government was not obligated to produce its Rule 1006 financial analysis summaries, which were created internally by the Government.  (Id. at 7.)  However, Magistrate Judge Mayeron held that if the Government retained an expert for financial loss analysis in the future, then the Government was required to "make its expert disclosures" on or before November 15, 2014.  (Id. at 3.)

Defendant contends that the magistrate judge erred in her Order by not requiring the Government to produce the exact number of alleged victims and the analyses underlying its loss calculation. (Def.'s Objs. at 1 [Doc. No. 54].)  Specifically, Meadows

3

argues that this information must be produced pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Federal Rule of Criminal Procedure 16.  (Id. at 2.)

### III.  DISCUSSION

#### A. Standard of Review

"The standard of review applicable to appeal of a magistrate judge's order on a nondispositive issue is extremely deferential."  Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999).  This Court will reverse such an order only if it is clearly erroneous or contrary to law.  See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a).

#### B. Disclosure of Government's Loss Analyses Not Compelled by Brady

Defendant contends that according to Brady, the Government must produce (1) its financial loss analyses, and (2) the number of victims allegedly harmed by Meadows.  (Def.'s Objs. at 3 [Doc. No. 54].)  Defendant alleges that "[p]roving that the government has the numbers wrong in its Indictment is material to the defense of this case."  (Id.)  The Government explains that it arrived at the $9,000,000 figure through a "straightforward calculation."  (Pl.'s Resp. at 1, n.1 [Doc. No. 55].)  The calculation consisted of "add[ing] up the total amount of money that the defendant took from the victims in this case," and then "subtract[ing] from this amount any money that the defendant returned to his victims in the form of purported interest payments or repayments of principal."  (Id.)

In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment."  Brady, 373 U.S. at 87; see also

Kyles v. Whitley, 513 U.S. 419 (1995) (explaining that when determining whether evidence not disclosed by the government was "material," in violation of Brady, the cumulative effect of all the suppressed evidence favorable to the defendant is considered, rather than considering each item of evidence individually); United States v. Bagley, 473 U.S. 667, 669 (1985) (holding that evidence withheld by the government is "material" as would require reversal of conviction, only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different); United States v. Agurs, 427 U.S. 97, 112-13 (1976) (same).

The United States Court of Appeals for the Eighth Circuit held in United States v. Miller that "Brady is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation."  698 F.3d 699, 704 (8th Cir. 2012) (internal citation omitted) (finding that the defendant failed to establish a Brady violation because the facts did not show that the government suppressed evidence that was favorable to the defendant and material to guilt or punishment).  Therefore, the Government is not required to disclose Government documents that are non-exculpatory.  See United States v. Roach, 28 F.3d 729, 734 (8th Cir. 1994) (holding that the defendant failed to demonstrate that the information he sought was exculpatory); United States v. Krauth, 769 F.2d 473, 476 (8th Cir. 1985) (same).  Accordingly, the evidence that the Defendant seeks must be exculpatory in order for the Court to determine that Brady mandates disclosure.

Here, the Government contends that Brady does not mandate disclosure of its internal analyses of the alleged financial loss and the victims involved.  (Pl.'s Resp. at 2-3 [Doc. No. 55].)  The Court agrees.  First and foremost, Defendant already has the

5

documents that the Government relied upon to calculate the victims' loss. During discovery, the Government produced information about both the relevant raw financial data and the alleged victims' identities. Specifically, the Government produced the Defendant's pertinent bank records from his personal and business Wells Fargo accounts. (Id. at 2.) The Government explains that its loss calculation is based upon the deposits and withdrawals from these accounts. (Id.) In addition to producing all relevant bank records, the Government also produced to Defendant interview reports, which contained information about the identities of the alleged victims. (See id.) Theoretically, Defendant may use the bank records and interview reports to reconstruct the Government's loss analyses. Meadows could identify the alleged victims from the interview reports, total the money he received from these individuals, and then subtract the funds that he returned to the victims. Therefore, Meadows already has the information, which he erroneously seeks through his Motions and Objections.

Second, the Government's summary analyses of the transactions in Defendant's accounts are non-exculpatory. Simply because Meadows believes that the Government has miscalculated the victims' loss does not mean that the Government's financial analyses constitute material evidence that favors Defendant. Cf. Brady, 373 U.S. at 87. A significant distinction exists between an undisclosed document that favors a defendant, and a document that contains allegedly incorrect analyses that are based on pre-disclosed data. Like the defendants in Roach and Krauth, Meadows has failed to demonstrate to the Court how the documents he seeks to compel the Government to disclose are exculpatory. See Roach, 28 F.3d at 734; Krauth, 769 F.2d at 476. Rather, Defendant already has the underlying raw

6

data and information that he continues to seek.  Therefore, Brady does not obligate the Government to disclose its financial loss analyses.

### C. Disclosure of Government's Loss Analyses Not Compelled by Rule 16

In Defendant's Objections he also argues that the magistrate judge erred in her rulings because, pursuant to Federal Rule of Criminal Procedure 16(a), the Government must disclose its analyses regarding the number of alleged victims and the alleged financial loss suffered by the victims.  (Def.'s Objs. at 4-6 [Doc. No. 54].)  In response, the Government contends that because a government agent prepared its analyses of Defendant's bank records, under Rule 16(a)(2) the Government is not required to disclose this internal document.  (Pl.'s Resp. at 2 (citing Fed. R. Crim. P. 16(a)(2)) [Doc. No. 55].)

According to Rule 16(a)(1)(E), "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy" any "item [that] is material to preparing the defense," as well as any item that "the government intends to use . . . in its case-in-chief at trial."  Fed. R. Crim. P. 16(a)(1)(E)(i), (ii).  However, Rule 16 qualifies this general rule of discovery.  Rule 16(a)(2) states that Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."  Fed. R. Crim. P. 16(a)(2).  Reading these two provisions in tandem, the Supreme Court concluded that "a defendant may examine documents material to his defense, but, under Rule 16(a)(2), he may not examine Government work product."  United States v. Armstrong, 517 U.S. 456, 463 (1996).

Applying this principle, this Court held in United States v. Wirth, that the Government's rough notes and draft summaries were not subject to disclosure because the documents were "work product" under Rule 16(a)(2).  United States v. Wirth, et al., No. 11-cr-256 (ADM/JJK), 2012 WL 1580991, at *1 (D. Minn. May 4, 2012) (citing United States v. Jack, 263 F.R.D. 640, 646 (E.D. Cal. 2010)).

Here, the documents that Defendant seeks are also sheltered from disclosure by Rule 16(a)(2).  In its brief, the Government stated that its analyses of the bank records were completed by a government agent.  (Pl.'s Resp. at 2 [Doc. No. 55].)  Therefore, the Government's analyses, which rely on both the victim interview reports and Defendant's bank records, are "Government work product."  See Armstrong, 517 U.S. at 463; Wirth, et. al., 2012 WL 1580991, at *1.  Pursuant to Rule 16(a)(2), these analyses are non-discoverable before trial.  See Fed. R. Crim. P. 16(a)(2).  Instead, Defendant will have the opportunity during trial to cross-examine and rebut the Governments' claims about alleged victims and alleged fraudulent transactions.  Although Defendant is frustrated that he cannot review the Government's internal documents (Def.'s Objs. at 5 [Doc. No. 54]), the Government is not obligated to disclose its analyses.  Based on the aforementioned reasons, Magistrate Judge Mayeron's ruling on Defendants two Motions is not clearly erroneous or contrary to law.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Objections to the Magistrate Judge's October 10, 2014 Order [Doc. No. 51] are **OVERRULED**;

2. Defendant's Appeal [Doc. No. 54] to the Magistrate Judge's October 10, 2014 Order [Doc. No. 51] is **DENIED**;

3. Magistrate Judge Mayeron's October 10, 2014 Order [Doc. No. 51] is **AFFIRMED.**

Dated:  November 25, 2014               s/Susan Richard Nelson
                                        SUSAN RICHARD NELSON
                                        United States District Judge