# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 14-cr-251 (SRN/JSM) |
| Plaintiff, | |
| v. | **FINAL ORDER OF FORFEITURE** |
| Sean M. Meadows, | |
| Defendant. | |

Benjamin F. Langner, Melinda A. Williams, and James S. Alexander, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Lisa Lodin Peralta, Robins Kaplan LLP, 800 LaSalle Ave, Ste. 2800, Minneapolis, MN 55402, for Defendant Sean M. Meadows.

Lousene M. Hoppe, Fredrickson & Byron, PA, 200 South 6th St., Ste. 4000, Minneapolis, MN 55402, for Third Party Petitioner Michelle Meadows.

Natus Corporation d/b/a Hamernick Decorating Center, 1381 Rice St., St. Paul, MN 55117, pro se Third Party Petitioner.

M. Jean Stepan, Ramsey County Attorney's Office, 121 7th Pl. East, Ste. 4500, St. Paul, MN 55105, for Third Party Petitioner County of Ramsey.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Third Party Petitioner Michelle Meadows' Petition for an Ancillary Hearing on Forfeiture ("Meadows Petition") [Doc. No. 99], Third Party Petitioner Natus Corporation's Petition of Interest in Property at 973 Payne Ave ("Natus Petition") [Doc. No 97], Third Party Petitioner County of Ramsey's Petition of Interest ("Ramsey Petition") [Doc. No. 104], and the Government's Motion for Partial

Summary Judgment and Motion for a Final Order of Forfeiture (collectively, the "Government's Motions") [Doc. Nos. 154 and 155]. A hearing on the Government's Motions was held on March 25, 2016. For the reasons set-forth below, the Meadows Petition is denied while the Natus Petition, Ramsey Petition and the Government's Motions are granted.

## I.   BACKGROUND AND UNCONTESTED MATTERS

In August of 2014, the Government brought various criminal fraud and money laundering charges against Sean Meadows ("Defendant"). (Indict., Counts 1–12 [Doc. No. 1].) The Indictment sought the forfeiture of certain property acquired with the proceeds of Defendant's fraudulent enterprise, including real estate located at 973 Payne Ave., St. Paul, Minnesota ("Payne Ave. Property") and 15522 NE 49th Ave., Atwater, Minnesota ("Atwater Property"). (Id., Forfeiture Allegations.) On December 10, 2014, Defendant pled guilty to most of the charges against him. (See Court Minutes dated December 10, 2014 [Doc. No. 69].) Shortly thereafter, the Government sought and received a preliminary order of forfeiture which included the Payne Ave. Property and the proceeds from the sale of the Atwater Property.[1] (See Preliminary Order of Forfeiture dated March 11, 2015 ("Prelim. Forfeiture Order") [Doc. No. 76].)

The Government then provided the notice of forfeiture required under 21 U.S.C. § 853(n)(1). In response, third parties Natus Corporation ("Natus"), County of Ramsey

---

[1] The Atwater Property was sold by agreement of the parties and the proceeds, totaling approximately $17,466.20, were placed in escrow pending the resolution of these forfeiture proceedings. (See Preliminary Order of Forfeiture dated March 11, 2015 at ¶ 6(b) [Doc. No. 76]; Decl. of Kathy Weston [Doc. No. 158], Ex. H [Doc. No. 158-8] (containing the escrow agreement).)

("Ramsey County"), and Michelle Meadows ("Ms. Meadows") filed petitions claiming interests in the Payne Ave. and/or Atwater Properties.   (See Natus Petition, Ramsey Petition, and Meadows Petition.)   Natus claims an interest in the Payne Ave. Property by virtue of a mechanic's lien for $4,051.67 in unpaid labor and materials.   (Natus Petition.) Ramsey County claims an interest in the Payne Ave. Property in the form of unpaid taxes and interest totaling approximately $19,404.05.   (Ramsey Petition; Pl.'s Mem. in Supp. of Mot. for Partial Summ. Judg. ("Mem. in Supp.") at 4 [Doc. No. 157].)   Ms. Meadows claims an interest in the proceeds from the sale of the Atwater Property.   (See Meadows Petition at ¶¶ 9, 15–17.)   She also claims an interest in the Payne Ave. Property.   (See id. at ¶¶ 9–14, 17.)

The Government does not oppose the Natus or Ramsey County Petitions.   (Mem. in. Supp. at 4, 11.)   Nor does it oppose Ms. Meadows' claim to one-half of the proceeds from the sale of the Atwater Property.[2]   (Id. at 5, 11.)   However, the Government opposes Ms. Meadows' claim to the Payne Ave. Property and moves for partial summary judgment and a final order of forfeiture.   (See Government's Motions.)   Specifically, the Government contends that Ms. Meadows lacks standing because she does not have a legal interest in the

_____

[2] The Atwater Property was purchased by Defendant and Ms. Meadows in 2002, before Defendant initiated his fraudulent enterprise, and was titled in both their names.   (See Decl. of Kathy Weston [Doc. No. 158], Ex. G [Doc. No. 158-8] (containing a quit claim deed to the Atwater Property); Mem. in Supp. at 4–5.)   It is not entirely clear how much of the proceeds from the sale of the Atwater Property Ms. Meadows claims (e.g., half or all).   (See Meadows Petition at ¶¶ 9, 17 (generally describing Ms. Meadows' "legal interest" in the Atwater Property).)   However, Ms. Meadows acknowledged the Government's position on the Atwater Property and did not argue that her interest was more than half the proceeds.   (See Third-Party Michelle Meadows's Mem. in Opp. to Pl.'s Mot. for Partial Summ. Judg. at 2 [Doc. No. 161].)   Thus, the Court assumes Ms. Meadows claims an interest in only half the proceeds.

Payne Ave. Property.  (See generally Mem. in Supp.; Pl.'s Reply Mem. in Supp. of Mot. for Summ. Judg. ("Reply") [Doc. No. 164].)  Ms. Meadows argues that she has standing because funds from her 401(k) retirement account were used to purchase and improve the Payne Ave. Property and she subsequently exercised dominion and control over that Property.  (See generally Third-Party Michelle Meadows's Mem. in Opp. to Pl.'s Mot. for Partial Summ. Judg. ("Mem. in Opp.") [Doc. No. 161].)

Since there is no opposition to the Natus and Ramsey County Petitions, the Court grants those Petitions.  Similarly, the Court grants the Meadows Petition to the extent Ms. Meadows claims an interest in half of the Atwater Property sale proceeds.  However, for the reasons discussed below, the Court denies the Meadows Petition to the extent Ms. Meadows claims an interest in the Payne Ave. Property.

## II.    FACTS

Ms. Meadows married Defendant in 2000.  (Aff. of Michelle Meadows ("Meadows Aff.") at ¶ 1 [Doc. No. 162].)  Starting in 2002, Ms. Meadows and Defendant (collectively, the "Meadows") began purchasing real estate for investment purposes.  (Id. at ¶ 2.)  In the summer of 2010, the Meadows were notified about an opportunity to purchase the Payne Ave. Property.  (See id. at ¶ 4.)

After viewing the building and learning of a municipal program intended to revitalize the surrounding neighborhood, the Meadows agreed to purchase the Payne Ave. Property for approximately $40,000.  (See id. at ¶¶ 5–6, 8.)  Ms. Meadows attests that she and her husband decided that the best way to finance this purchase was for Ms. Meadows to take a loan from her 401(k) retirement account.  (See id. at ¶¶ 7, 9.)  However, on

September 3, 2010, Defendant used a $10,000 cashier's check drawn from a TCF National Bank account registered to the Meadows Financial Group LLC ("Meadows Financial TCF Account") to put a down payment on the Payne Ave. Property.[3]  (See id. at ¶ 8; Decl. of Matthew Schommer ("Schommer Decl.") at ¶¶ 7–8 [Doc. No. 74].)  The funds from the Meadows Financial TCF Account were traced to proceeds of Defendant's fraudulent enterprise.  (Schommer Decl. at ¶ 8.)

On September 23, 2010, Ms. Meadows took a $50,000 loan from her 401(k) account.  She alleges that she intended to use those funds as follows: (1) $10,000 to "replenish" the funds used by Defendant for the down payment, (2) approximately $30,000 to cover the remaining purchase price of the Payne Ave. Property, and (3) $10,000 to renovate the Property.  (See Meadows Aff. at ¶¶ 9–10, Ex. B at 4–9[4] [Doc. No. 162-1].)  According to Ms. Meadows, the only reason she took the loan was to finance the purchase and renovation of the Payne Ave. Property.  (Id. at ¶ 16.)  Ms. Meadows deposited the $50,000 from her 401(k) into the Meadows' TCF National Bank joint checking account ("TCF Joint Checking Account 3372") on September 28, 2010. (Id. at ¶ 11, Ex. C at 11–12.)

On September 29, 2010, Defendant withdrew approximately $30,000 as a cashier's check from the Meadows' TCF National Bank joint savings account ("TCF Joint Savings

---

[3] Ms. Meadows claims that this cashier's check was drawn on September 23, 2010. (Meadows Aff. at ¶ 8.)  However, since other evidence conclusively points to the cashier's check being drawn on September 3, 2010, the Court assumes this discrepancy is due to a scrivener's error.  (See Decl. of Matthew Schommer at ¶¶ 7–8 [Doc. No. 74].)

[4] Exhibits A–D were provided as a single attachment to the Meadows Affidavit.  (See Doc. No. 162-1.)  The Court cites to the ECF page numbers assigned to these exhibits.

Account 3367"). (Id. at ¶ 12, Ex. D at 14–16; Schommer Decl. at ¶ 9.) He used that cashier's check to pay the remaining purchase price of the Payne Ave. Property at the closing the following day. (Meadows Aff. at ¶¶ 12–13.) Proceeds of Defendant's fraudulent enterprise were traced to the funds Defendant withdrew from TCF Joint Savings Account 3367. (Schommer Decl. at ¶ 9.)

On September 30, 2010, Ms. Meadows caused $30,000 to be transferred from TCF Joint Checking Account 3372 to TCF Joint Savings Account 3367 "to cover the final payment of the property." (Meadows Aff. at ¶ 13, Ex. D at 12–13.) However, Ms. Meadows did not attend the closing and the warranty deed titled the Payne Ave. Property exclusively to Defendant. (See id. at ¶ 13; Decl. of Kathy Weston ("Weston Decl.") [Doc. No. 158], Ex. A ("Payne Ave. Property Deed") [Doc. No. 158-1] (containing the warranty deed to the Payne Ave. Property).) Similarly, the Housing and Urban Development Settlement Statement, which accompanied the purchase, lists only Defendant as a buyer/owner of the Property. (See Weston Decl., Ex. B ("HUD Settlement Statement") [Doc. No. 158-2].)

During the fall of 2010, the Meadows worked together to hire and oversee various contractors who renovated the Payne Ave. Property. (See Meadows Aff. at ¶¶ 17–18.) These contractors were primarily paid in cash. (Id. at ¶ 18.) Ms. Meadows had "independent access" to the Property and visited it occasionally to examine the renovations and ensure it was in good repair. (See id. at ¶¶ 20–21.)

In late October 2010, Ms. Meadows transferred the remaining $20,000 of her 401(k) loan from TCF Joint Checking Account 3372 to TCF Joint Saving Account 3367

with the intent that it cover the renovation costs as well as Defendant's initial down payment.  (See id. at ¶ 19, Ex. D at 14–16.)  However, on October 22, 2010, Defendant withdrew $20,000 from TCF Joint Savings Account 3367 and deposited those funds in a Wells Fargo Bank account held exclusively in his name.  (See Reply at 10; Decl. of Ephraim Holmgren ("Holmgren Decl.") at ¶¶ 4–5 [Doc. No. 165].)  Defendant did not use those funds to "reimburse" the down payment or renovation costs of the Payne Ave. Property, but instead used them to gamble at a horse track and casino and transferred some to other accounts associated with Defendant's fraudulent enterprise.  (See Reply at 10; Holmgren Decl. at ¶ 6.)

After unsuccessful attempts to sell the Payne Ave. Property, the Meadows decided to rent it and in July 2014 a tenant leased the space.  (Meadows Aff. at ¶¶ 21–22.) However, only Defendant is listed as the landlord on the lease.  (See Weston Decl., Ex. C ("Lease") [Doc. No. 158-3].)  The Meadows used the rent they received to pay for household expenses like groceries and gas from July 2014 until July 2015 when, pursuant to these forfeiture proceedings, the tenant began paying rent to the U.S. Marshals Service. (See Meadows Aff. at ¶ 22; Prelim. Forfeiture Order.)

Defendant's fraudulent enterprise ran from 2007 until April of 2014.  (Guilty Plea Tr. at 34 [Doc. No. 71].)  Ms. Meadows was never implicated in Defendant's criminal activities and claims she was unaware of his fraudulent enterprise until police raided the Meadows' home in May of 2014.  (See Meadows Aff. at ¶¶ 23–24.)  At some point after learning of the charges against Defendant, Ms. Meadows initiated divorce proceedings. (See id. at ¶ 1.)  However, they are currently still married.  (Id.)

## III.   DISCUSSION

### A.  Standard of Review

Third party petitions asserting interest in property subject to criminal forfeiture are addressed through what are commonly known as ancillary proceedings.  See 21 U.S.C. § 853(n); Fed. R. Crim. P. 32.2(c).  In an ancillary proceeding, a party may move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Fed. R. Crim. P. 32.2(c)(1)(B).

Summary judgment is proper if, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986).   "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp., 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.  Id. at 323.  Summary judgment is properly entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but

must set forth specific facts showing that there is a genuine issue for trial."   Anderson, 477 U.S. at 256.   "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted."   Id. at 248.

### B.  Ms. Meadows' Standing

The Government argues that Ms. Meadows lacks standing to bring a third party petition related to the Payne Ave. Property because she has no legal interest in that Property. (Mem. in Supp. at 5.)   Specifically, the Government contends that because there is no written instrument giving Ms. Meadows legal interest in the Payne Ave. Property, she does not have statutory standing.  (See id. at 8–9; Reply at 2–5.)  Ms. Meadows claims that the Government "conflates ownership and legal interest with title and documentation, and ignores the importance of dominion and control."  (See Mem. in Opp. at 10–11.)   She argues that because funds from her 401(k) account were used to purchase and improve the Payne Ave. Property and she subsequently had independent access to it (i.e., control), she has a legal interest in the Property.  (See id.)

### 1.  Statutory Standing in Criminal Forfeitures

The criminal forfeiture statute allows, in relevant part, "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited" to "petition the court for a hearing to adjudicate the validity of [her] alleged interest in the property."  21 U.S.C. § 853(n)(2).  Federal Rule of Criminal Procedure 32.2(c) provides procedures for third parties with interests in property subject to criminal forfeiture to petition courts to have those interests adjudicated.   However, a third party must have

standing to have her petition heard. United States v. Timley, 507 F.3d 1125, 1129 (8th Cir. 2007) (quotations omitted).

Third party forfeiture standing consists of two parts, constitutional standing and statutory standing. Id. Constitutional standing derives from Article III of the United States Constitution, which limits the authority of federal courts to "cases" and "controversies." United States v. Basurto, No. 10-cr-0304(2) (PJS/AJB), 2013 WL 1331983, at *1 (D. Minn. Mar. 29, 2013). "An ownership interest sufficient for Article III standing can be shown by actual possession, control, title, and financial stake." United States v. White, 675 F.3d 1073, 1078 (8th Cir. 2012) (quotation omitted). Here, the Government does not contest Ms. Meadows' constitutional standing. Instead, it challenges her statutory standing.

Statutory standing requires that the petitioner have a legal interest in the property. Timley, 507 F.3d at 1129; White, 675 F.3d at 1078. Section 853(n) does not define what constitutes a "legal interest," but courts have held that "it should be given its ordinary meaning." Timley, 507 F.3d at 1129. "Therefore, the term 'legal interest' encompasses only legally protected rights, *not equitable rights*." Id. (emphasis added). Federal courts look to the jurisdiction that created the property right to determine if a third party has a valid, legal interest. Id. at 1130. "If the claimant has no [legal] interest under state law, the inquiry ends, and the claim fails for lack of standing." Id.

Here, Minnesota law defines the property interests. A "purchaser" of real estate is one "to whom any estate or interest in real estate is conveyed for a valuable consideration . . . ." Minn. Stat. § 507.01. Property is conveyed through written instruments. See id. (defining "conveyance" as written instruments which create, assign, or otherwise affect

title to real estate).   Minnesota's statute of frauds for property interests holds that "[n]o estate or interest in lands . . .  shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing . . . ." Minn. Stat. § 513.04.  In short, a legally protected property interest is one created through a written instrument (e.g., a deed) or by act or operation of law.

It is undisputed that Ms. Meadows does not hold legal title to the Payne Ave. Property and no written instrument evidences her interest in the Property.  A case from the Sixth Circuit persuasively illustrates why this is problematic for Ms. Meadows' standing. There, the government, in connection with criminal drug charges brought against several members of a motorcycle club, sought civil forfeiture of the club's clubhouse.[5]  United States v. Real Prop. Located at 4527-4535 Michigan Ave., Detroit, Mich., 489 F. App'x 855, 856 (6th Cir. 2012) (hereinafter, 4527-4535 Michigan Ave.)  The clubhouse was owned by and titled in the name of a non-profit business entity ("DHI").  Id.  Several unindicted club members filed claims alleging they had an interest in the clubhouse because they paid monthly dues to the motorcycle club with the belief that those dues earned them an ownership interest in the property.  Id.

The government moved to dismiss these claims and the district court granted the

---

[5] Civil forfeiture under 18 U.S.C. §§ 981, 983 differs somewhat from criminal forfeiture under 21 U.S.C. § 853.  However, courts must assess third party ownership interests, as defined by state law, under both laws.  See United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1014–15 (8th Cir. 2003) (explaining the interest analysis in civil forfeitures); White, 675 F.3d at 1078 (explaining the interest analysis in criminal forfeitures).  Thus, the analysis of ownership interests under civil forfeiture may inform the interest analysis under criminal forfeiture.  See White, 675 F.3d at 1078 (citing civil forfeiture cases with approval when assessing a third party's legal interest in property subject to criminal forfeiture).

motion, finding that the club members lacked even constitutional standing. <u>Id.</u> at 857. On appeal, the Sixth Circuit affirmed that ruling. <u>Id.</u> It looked to Michigan's statute of frauds for property interests, which contained language identical to Minnesota's, <u>compare</u> Mich. Comp. Laws § 566.106 <u>with</u> Minn. Stat. § 513.04, to assess whether the club members had a "colorable property interest" in the clubhouse. <u>4527-4535 Michigan Ave.</u>, 489 F. App'x at 857. The Court concluded:

> The deed to the clubhouse lists only DHI as the owner and the claimants do not allege that any other writing exists as a basis for their claim of a property interest. In sum, the claimants cannot allege a colorable interest in the real property based merely upon their belief that they have one.

<u>Id.</u>; <u>see also</u> <u>United States v. One Parcel of Real Prop. Located at 19127 SW 65th St., Pembroke Pines, Broward Cty., Fla.</u>, No. 12-61226-CIV, 2013 WL 1023506, at *2–4 (S.D. Fla. Mar. 14, 2013) (holding that third parties lacked the necessary legal interest to challenge the civil forfeiture of property which was not titled in their names, despite having possession of the property and contributing funds towards its purchase).

Ms. Meadows' belief that her 401(k) funds were used to purchase and improve the Payne Ave. Property—affording her an ownership interest in the Property despite no written instrument to that effect—does not create the legal interest necessary for statutory standing. The fact that she exercises some dominion and control over the Property does not alter this conclusion. Although Ms. Meadows' financial stake in and control over the Payne Ave. Property may afford her constitutional standing, <u>see</u> <u>White</u>, 675 F.3d at 1078, it does not establish the legal interest necessary for statutory standing.

Similarly, Ms. Meadows' financial stake in and control over the Payne Ave. Property

may give her an equitable interest in the Property, but an equitable interest does not confer statutory standing.  See United States v. Caruthers, 765 F.3d 843, 845 (8th Cir. 2014) ("The petitioner must state an interest that is legal, as opposed to equitable.").  The Basurto case illustrates this point.  There, the defendant ("Martin") pled guilty to drug conspiracy charges and the government sought criminal forfeiture of his property, including a particular home.  Basurto, 2013 WL 1331983 at *1.  Martin's sister ("Yesenia") filed a third party petition claiming that she purchased the home and exercised dominion over it, despite the fact that title to the property was registered in her mother's ("Maria") name.  Id. at *1–2.  The Basurto Court concluded that while Yesenia might have an equitable interest in the property, she did not have a legal interest under Minnesota property law because she was not the registered title holder.  Id. at *2; see also United States v. Knoll, 785 F.3d 1151, 1156 (7th Cir. 2015) (holding that the caretaker of a clubhouse did not have a legal interest in the property by virtue of caring for the property).  Like Yesenia, whatever Ms. Meadows' equitable interest in the Payne Ave. Property may be, it does not afford her statutory standing.

### 2.  Straw or Nominal Ownership

Ms. Meadows cites cases addressing nominal or "straw" owners of property to support her position that legal interest in property is not just about holding title.  (See Mem. in Opp. at 9–10.)  In general, straw ownership is where a criminal defendant places legal title to ill-gotten property in the name of another in an attempt to shield it from forfeiture or other legal repercussions.  See Totaro, 345 F.3d at 995 (collecting cases).  The hallmarks of straw ownership are the titled owner's "lack of possession of the property and no exercise of

dominion or control over it." Id.  To address the problem of straw owners, courts have held that possessing legal title to property does not, by itself, constitute an interest which must be accommodated in criminal forfeitures.  See id. at 995–99.

The straw owner inquiry is fundamentally different than the one presently before the Court.  Straw ownership is about whether criminal forfeiture is warranted *despite* an individual having the statutory standing (i.e., legal interest) necessary to challenge the forfeiture by virtue of holding title to the property.  See id. at 995–96 (concluding that because the defendant's wife held legal title to the property and also exercised dominion and control over it, she was not a straw owner).  Here, the question is *whether* Ms. Meadows has the legal interest necessary for statutory standing.

The Wendling case highlights the distinction between statutory standing and straw ownership.  See United States v. Wendling, 359 F. Supp. 2d 850 (D.N.D. 2005).  There, the government sought forfeiture of Minnesota real estate used in the defendant's drug operation.  Id. at 852.  The property was held by the defendant and his mother ("Wendling") as joint tenants, with both their names appearing on the title.  Id.  Wendling paid the vast majority of the purchase price and taxes for the property, but she did not reside there and rarely visited.  Id.  The defendant lived at the property and maintained it.  Id.  Wendling argued that the defendant had no interest in the property which the government could seize, despite his name being on the deed.  Id.  Conversely, the government claimed that Wendling was a straw owner with no legal interest in the property and that the entire property could be forfeited.  Id. at 854.

The Wendling Court rejected both positions.  See id. at 853–55.  First, it noted that

under Minnesota law, joint tenants are presumed to have equal legal interest in the land. <u>Id.</u> at 853–54. Both Wendling and the defendant were listed on the title and there was no indication the defendant gave up his legal interest in the property; thus, the government could seize that interest. <u>Id.</u> Second, the <u>Wendling</u> Court held that "[Wendling] has title and a financial stake in the property and her testimony demonstrates a familiarity and personal interest in the property. These facts clearly show that [Wendling] did not 'gift' the property to her son and that she was more than a 'straw' person in the purchase and maintenance of this property." <u>Id.</u> at 855. Ultimately, the <u>Wendling</u> Court held that partial forfeiture, consisting of the defendant's interest in the property, was appropriate. <u>Id.</u> at 855–56.

<u>Wendling</u> stands for the proposition that financial contributions to the purchase of a property, coupled with legal title to and a personal interest in that property, defeats the allegation one is a straw owner. But here, the Government does not contend that Ms. Meadows is a straw owner of the Payne Ave. Property. Instead, the question is whether Ms. Meadows has the legal interest necessary for statutory standing.

### 3. Alternative Bases for Statutory Standing

Since no written instrument gives Ms. Meadows a legal interest in the Payne Ave. Property, the Court must consider whether a legal interest was created "by act or operation of law . . . ." <u>See</u> Minn. Stat. § 513.04. Based on Ms. Meadows submissions, there are two acts or operations of law which might afford her a legal interest in the Property: a constructive trust in her favor, or her marital interest in the Property. However, for the reasons set-forth below, neither of these alternatives is viable.

### a. Constructive Trusts

Ms. Meadows cites to In re Estate of Eriksen, 337 N.W.2d 671 (Minn. 1983) (hereinafter, Eriksen), which addressed the creation of a constructive trust, as support for her position that she has a legal interest in the Payne Ave. Property.  (See Mem. in Opp. 10.) The Court construes this as a request to impose a constructive trust for Ms. Meadows' benefit on the Payne Ave. Property.  The Government generally argues that Eriksen is distinguishable from the present matter, but does not address whether a constructive trust is warranted, or whether such a trust would create the legal interest necessary for statutory standing.  (See Reply at 7–8.)

"A constructive trust is an equitable remedy 'intended to prevent the unjust enrichment of a person holding property under a duty to convey it or use it for a specific purpose.'"  In re WEB2B Payment Sols., Inc., 815 F.3d 400, 407 (8th Cir. 2016) (quoting Koberg v. Jones, 157 N.W.2d 47, 52 (Minn. 1968)).   "[W]henever the legal title to property is obtained through fraud, oppression, duress, undue influence, force, crime, or similar means, or by taking improper advantage of a confidential or fiduciary relationship, a constructive trust arises in favor of the person equitably entitled to the property."  Wright v. Wright, 311 N.W.2d 484, 485 (Minn. 1981).  There is no rigid formula governing when a constructive trust is appropriate and courts are "free to effect justice according to the equities peculiar to each transaction wherever a failure to perform a duty to convey would result in unjust enrichment."  Knox v. Knox, 25 N.W.2d 225, 228 (Minn. 1946).  Despite being equitable remedies, constructive trusts arise by operation of law and constitute legal

interests under 21 U.S.C. § 853(n).  Freundschuh v. Freundschuh, 559 N.W.2d 706, 711

(Minn. Ct. App. 1997) (constructive trusts arise by operation of law); United States v.

Shefton, 548 F.3d 1360, 1365 (11th Cir. 2008) (collecting cases that hold constructive trusts

constitute legal interests under § 853(n)).

A case from the Eighth Circuit illustrates the role of constructive trusts in the

forfeiture context.  There, the government sought civil forfeiture of a house it alleged the

defendant ("Bruce") purchased with the proceeds of illegal drug sales.  United States v. One

Parcel of Prop. Located at Tracts 10 & 11 of Lakeview Heights, Canyon Lake, Comal Cty.,

Tex., 51 F.3d 117, 119 (8th Cir. 1995) (hereinafter, Tracts 10 & 11).[6]  Bruce paid the initial

purchase price of the home, was the sole record title holder, and paid the property taxes.  Id.

However, from the time he purchased the property until the government sought to seize it

four years later, he allowed his parents ("the Johnsons") to live rent-free in the house.  The

Johnsons made considerable improvements to the home, often with Bruce's father doing the

work himself.  Id. at 119–20.

Based on these facts, the Johnsons asked that the district court set aside its previously

issued default judgment and forfeiture orders.  Id. at 118.  Specifically, they requested that

the district court impose a constructive trust in their favor because of Bruce's "mistake" in

not deeding them legal title to the property.  Id. at 119–20.  The district court refused and

held that the Johnsons lacked standing to challenge the forfeiture.  Id. at 120.

---

[6] Tracts 10 & 11 was decided before the Civil Asset Forfeiture Reform Act significantly
expanded the instances where the government may seek criminal forfeiture of property.  See
United States v. Jennings, 487 F.3d 564, 584–85 (8th Cir. 2007) (describing the expansion
of criminal forfeitures under 28 U.S.C. § 2461(c)).

On appeal, the Eighth Circuit examined Wisconsin law to address the Johnsons' constructive trust claim.[7] Id. at 121. The Court held that a constructive trust "against the government"[8] was unwarranted. Id. "Although, in hindsight, it may have been unwise for Bruce not to have deeded the property to his parents, this is not the type of 'mistake' which constitutes unjust enrichment to or unconscionable conduct by the government." Id.

None of the elements allowing the imposition of a constructive trust are present here. There is no evidence, or even the allegation, that Defendant obtained title to the Payne Ave. Property through an abuse of his relationship with Ms. Meadows. Similarly, there is no evidence that Ms. Meadows intended for Defendant to convey title to her. Nor will Defendant or the Government be unjustly enriched absent a constructive trust. Instead, the evidence suggests Ms. Meadows made a mistake by not having the Payne Ave. Property titled in her name, but that mistake does not warrant imposing a constructive trust in her favor. See id.

The Eriksen case is distinguishable and does not alter the Court's holding. There, the long-time girlfriend ("Pamela") of a recently deceased man ("Jorgen") sued his estate to

---

[7] Wisconsin's law on constructive trusts is similar to Minnesota's, requiring unjust enrichment obtained through unconscionable conduct. See Tracts 10 & 11, 51 F.3d at 121.

[8] Judge Loken, in a concurring opinion, suggested that the Johnsons' characterization of the constructive trust as "against the government" misstated the issue. See Tracts 10 & 11, 51 F.3d at 121 (Loken, J., concurring). Instead, he saw the issue as "whether [the Johnsons'] pre-forfeiture improvements require the imposition of a constructive trust against [their] son Bruce, the property's owner." Id. at 122. Still, Judge Loken concluded a constructive trust was unwarranted because Bruce was not unjustly enriched since the Johnsons lived at the property rent and tax free and Bruce did not retain full ownership of the home through unconscionable means. Id.

establish her interest in the home they had shared.  Eriksen, 337 N.W.2d at 672.  Legal title to the property was held in Jorgen's name alone, as was the mortgage.  Id.   However, Pamela and Jorgen lived together in the home for nearly two years before Jorgen passed away, equally dividing expenses like mortgage payments, utilities, and the premiums on an insurance policy that paid off the vast majority of the remaining mortgage upon Jorgen's death.  Id.  In relevant part, the Minnesota Supreme Court upheld the probate court's imposition of a constructive trust giving Pamela a one-half interest in the home.  Id. at 674. The court agreed that a constructive trust was necessary to prevent the unjust enrichment of Jorgen's estate because Pamela's contributions to the mortgage and insurance premiums resulted in the mortgage being largely paid off upon Jorgen's passing.  Id.

As described above, here there is no risk of unjust enrichment absent a constructive trust.  Ms. Meadows and Defendant benefited equally from the purchase of the Payne Ave. Property in the form of the rental income it generated.  No unjust enrichment will result from the forfeiture of the Property as forfeiture will have the same effect on Defendant and Ms. Meadows—both lose any interest they have in the Property.  The Government's seizure of the Property cannot be considered unjust enrichment since federal statutes specifically allow the forfeiture of property constituting, or derived from, the proceeds of criminal fraud as a means of compensating victims.  See 18 U.S.C. § 981(a)(1)(C); 21 U.S.C. § 2461(c); United States v. Jennings, 487 F.3d 564, 584–85 (8th Cir. 2007) (describing the expansion of criminal forfeitures under 28 U.S.C. § 2461(c)).  In short, the Court cannot conclude a constructive trust is warranted under the circumstances.

### b.  Marital Property Interest

Ms. Meadows mentions her marital interest in the Payne Ave. Property, but does not explicitly assert that interest as a basis for statutory standing.  (See Petition at ¶ 1; Mem. in Opp.)  The Government argues that any marital interest Ms. Meadows has is not the sort of interest that the criminal forfeiture statutes recognize because it did not vest at the necessary time.  (See Mem. in Supp. at 10.)

"Minnesota recognizes that a nontitled spouse has a special ownership interest in marital property, which vests on commencement of the dissolution proceeding."  Miller v. Miller, 352 N.W.2d 738, 743 (Minn. 1984); see Minn. Stat. § 518.003, subd. 3(b) (defining marital property and stating that a nontitled spouse's interest in marital property vests "not later than the time of the entry of the decree in a proceeding for dissolution").  The Eighth Circuit has yet to decide whether a marital property interest confers statutory standing in criminal forfeitures.   See White, 675 F.3d at 1081 (assuming, without deciding, that marital interests do confer statutory standing); United States v. Totaro, 345 F.3d 989, 998 (8th Cir. 2003) (declining to reach the issue of marital interest because the third party actually held legal title to and possession of the property).  Like in White, this Court need not decide whether Ms. Meadows' marital interest in the Payne Ave. Property affords her statutory standing because assuming that it does, that interest does not entitle her to relief under § 853(n)(6).

In White, the defendant ("Robert") was convicted of mail fraud and money laundering.   675 F.3d at 1076.  The government sought criminal forfeiture of the proceeds from Robert's sale of certain stock based on tracing the funds Robert used to

originally purchase the stock to his fraudulent activities.  Id.  Robert's wife ("Robyn") filed a third party petition asserting, in relevant part, a marital interest in the proceeds of the stock sale.  Id. at 1075–76.

Robyn and Robert were married before Robert's fraudulent scheme was discovered.  Id. at 1076.  However, it was not until after the district court ordered all property derived from Robert's fraudulent scheme forfeited that Robyn filed for divorce. Id.  Despite a state court awarding Robyn half the proceeds from the sale of the stock in her divorce proceedings, the federal district court dismissed Robyn's third party petition for lack of standing and because it failed on the merits.  Id. at 1077.

On appeal, the Eighth Circuit addressed Robyn's marital interest claim without deciding whether that interest afforded her statutory standing under § 853(n).  Id. at 1081. The court held that even assuming she had standing, Robyn had to establish that her marital interest in the stock proceeds was superior to Robert's, or that she was a bona fide purchaser for value of that interest.  Id. (citing 21 U.S.C. §§ 853(n)(6)(A) (superior interest), 853(n)(6)(B) (bona fide purchaser)).  Robyn argued that she was a bona fide purchaser of the stock sale proceeds by virtue of the state court recognizing her marital interest the proceeds.  Id.  The court rejected this argument because Robyn's marital interest in those proceeds vested—when she filed for divorce—only *after* she knew of Robert's fraud.  Id.  Thus, she did not fit the definition of a bona fide purchaser.  Id.

Here, Ms. Meadows' marital interest in the Payne Ave. Property vested when she filed for divorce.  See Miller, 352 N.W.2d at 743.  However, Ms. Meadows did not file for divorce until after she knew of Defendant's fraudulent enterprise and the forfeiture

claims against the Payne Ave. Property.  Since Ms. Meadows' marital interest vested only *after* she learned of Defendant's fraudulent enterprise, she cannot be a bona fide purchaser because she "was not reasonably without cause to believe that the [Property was] subject to forfeiture at the time she acquired her interest."  See White, 675 F.3d at 1081; 21 U.S.C. § 853(n)(6)(B).

Similarly, Ms. Meadows' marital interest is not a superior interest.  The criminal forfeiture statute protects property interests that were "vested in the petitioner rather than the defendant or [were] superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture . . . ."  21 U.S.C. § 853(n)(6)(A).

> To make sense of this provision, it is necessary to read the temporal requirement-"at the time of the commission of the acts which gave rise to the forfeiture"-as applying to both "vested in the petitioner rather than the defendant" and the alternative "or was superior to any right, title, or interest of the defendant."

United States v. Hooper, 229 F.3d 818, 821 (9th Cir. 2000) (quoting 21 U.S.C. § 853(n)(6)(A)).  Thus, to be entitled to relief, Ms. Meadows' marital interest had to vest at or before the time Defendant committed his crimes.  See id.  As described above, Ms. Meadows' marital interest in the Payne Ave. Property did not vest until she initiated divorce proceedings, which occurred after Defendant's fraudulent enterprise ended and he was charged.  See United States v. Burge, 829 F. Supp. 2d 664, 667–68 (C.D. Ill. 2011) (dismissing a petition claiming a marital property interest in real estate because the petitioner had yet to file for divorce and Illinois state law did not recognize marital property interests until dissolution of a marriage).

## IV.    CONCLUSION

Ms. Meadows lacks a legal interest in the Payne Ave. Property and does not have the statutory standing necessary to challenge its forfeiture.  No written instrument creates a legal interest in the Property for her, nor does any act or operation of law.  Even if Ms. Meadows' marital interest in the Property afforded her statutory standing, that interest is not one entitled to relief under the criminal forfeiture statutes.  Thus, the Meadows Petition as it pertains to the Payne Ave. Property must be dismissed.

## V.    ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Government's Motion for Partial Summary Judgment and Motion for a Final Order of Forfeiture ("Government's Motions") [Doc. Nos. 154 and 155] are **GRANTED** as follows:

   a. All right, title and interest in the following property is forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c):

      i. The real property and premises located at 973 Payne Avenue, St. Paul, Minnesota, and legally described as Lot 1, Joseph R. Weide's Rearrangement of Lots 29 and 30, Block 16, Arlington Hills Addition, Ramsey County, Minnesota ("Payne Ave. Property"), including all rent payments received by the U.S. Marshals Service since entry of the Preliminary Order of Forfeiture; and

      ii. One-half of the net proceeds from the sale of the real property and premises located at 15522 49th Avenue NE, Atwater, Minnesota ("Atwater Property").

   b. Quality Title of Willmar, LLC, is directed to disburse the funds being held in escrow from the sale of the Atwater Property as follows:

      i. One-half of the net proceeds shall be disbursed to Michelle

23

Meadows, through her counsel of record; and

    ii. One-half of the net proceeds shall be disbursed to the U.S. Marshals Service.

   c. The above property shall be disposed of by the United States in accordance with all applicable laws and this Order.

2. Third Party Petitioner Michelle Meadows' Petition for an Ancillary Hearing on Forfeiture ("Meadows Petition") [Doc. No. 99] is **DENIED IN PART AND GRANTED IN PART** as follows:

   a. Michelle Meadows is entitled to and shall receive one-half of the net proceeds from the sale of the Atwater Property;

   b. Otherwise, the Meadows Petition is **dismissed**.

3. Third Party Petitioner Natus Corporation's ("Natus") Petition of Interest in Property at 973 Payne Ave [Doc. No 97] is **GRANTED.** The amount due to Natus with respect to its mechanic's lien in the approximate amount of $4,051.67 shall be paid from the net proceeds from the sale of the Payne Ave. Property.

4. Third Party Petitioner County of Ramsey's ("Ramsey County") Petition of Interest [Doc. No. 104] is **GRANTED.** All taxes and unpaid interest due and owing to Ramsey County with respect to the Payne Ave. Property, in the approximate amount of $19,404.05, shall be paid from the net proceeds of the sale of that Property.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 24, 2016          s/ Susan Richard Nelson
                             SUSAN RICHARD NELSON
                             United States District Judge