**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Sean M. Meadows,<br><br>Defendant. | Case No. 14-cr-251 (SRN/JSM)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Benjamin F. Langner, Melinda A. Williams, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff.

Sean M. Meadows, Federal Correctional Institution Elkton, P.O. Box 10, Lisbon, Ohio, 44432, Pro Se.

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This matter is before the Court on Defendant Sean M. Meadows' Pro Se Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. No. 200] ("§ 2255 Mot.").[1] The Government opposes Defendant's motion. (Govt.'s Response [Doc. No. 205].) For the reasons set forth below, Defendant's motion is denied.

## II. BACKGROUND

### A. Charges and Initial Sentence

---

[1] Although Meadows is the "petitioner" in this action, because the matter is docketed in the criminal case file, the court refers to him as "Defendant" or "Meadows."

The Government filed an indictment against Defendant dated October 5, 2014 [Doc. No. 1] alleging mail fraud, wire fraud, money laundering, and participation in a transaction involving the proceeds of fraud. The indictment alleges that from 2007 until April 2014, Defendant Meadows participated in a scheme to defraud more than 50 investors of over $10 million in assets, which Defendant used for his own personal expenses or to pay off other investors in Ponzi-type payments. [Id. at 2–3.] Many of his victims were retirees—some of whom were terminally ill. [Doc. No. 193 at 20.] Defendant pleaded guilty in a change of plea hearing held before this Court on December 10, 2014. [Doc. No. 69.]

At that hearing, Defendant was asked a number of questions to ensure that he understood the consequences of his guilty plea. Relevant to Defendant's § 2255 Motion, he engaged in a colloquy with counsel for the Government, Benjamin Langner, regarding sentencing:

> MR. LANGNER: And you understand that at this point in time, the Government is not taking any position as to whether or not you've accepted responsibility?
>
> DEFENDANT: I do.
>
> MR. LANGNER: . . . [T]he advisory guidelines range would be 188 to 235 months if you receive the reduction for acceptance of responsibility and 262 to 327 months if you do not receive that reduction. Do you understand that?
>
> DEFENDANT: I do.

[Doc. No. 71 at 21.]

In a colloquy between Defendant and his counsel Mark Larsen, Defendant further

demonstrated his understanding of the nature of his potential sentencing range:

> MR. LARSEN: . . . [I]f you get three levels off for acceptance of responsibility, even under our own view of how the guidelines work, you'd be looking at probably, we think, 63 to 78 months just under the guidelines. Is that right?
>
> DEFENDANT: Yes, it is.
>
> MR. LARSEN: So even under our own view of the guidelines, you're looking at more than five years in this case. Right?
>
> DEFENDANT: Yes.
>
> MR. LARSEN: And you realize that the Judge could go along with everything that [the Government] just said and, even if you do get credit for acceptance of responsibility, you're looking at 15 to 20 years on this case?
>
> DEFENDANT: Yes.
>
> MR. LARSEN: And [if] she doesn't give you credit for acceptance of responsibility, you're looking at 22 to 27, 28 years. Is that right?
>
> DEFENDANT: Yes.
>
> MR. LARSEN: You're still prepared to proceed here today, even with those numbers in mind?
>
> DEFENDANT: I am.

[Id. at 26-27.]

Defendant also demonstrated his understanding that by pleading guilty he had no special agreement or cooperation arrangement with the Government such that it would be

recommending a downward departure in this case:

> MR. LANGNER: Mr. Meadows, you understand that there is no agreement between you and the government as to your plea in this case?
>
> DEFENDANT: Yes, I know that.
>
> MR. LANGNER: The Government may very well ask for a sentence above the guideline range in this case. Do you understand that?
>
> DEFENDANT: I do.
>
> MR. LANGNER: The Government may seek to not give you the benefit of the acceptance of responsibility. Do you understand that could happen?
>
> DEFENDANT: I do.

[Id. at 60–61.] Additionally, Defendant Meadows was directly questioned by the Court as to any agreement between him and the Government regarding sentencing benefits related to his guilty plea:

> THE COURT: Mr. Meadows, nothing that the Government has asked you to do has suggested to you that you will get some benefit at sentencing from those actions.
>
> DEFENDANT: They have not made me any deal or guaranteed me anything.
>
> THE COURT: You have not – you don't have any agreement with respect to any benefit. Is that correct?
>
> DEFENDANT: There is no established agreement.

[Id. at 65.]

The Court found that Meadows was mentally competent and capable of making an informed plea. (Id. at 68.) In addition, the Court found that his plea of guilty was made freely and voluntarily and was supported by independent facts in the record supporting the elements of the offense charged. (Id.) The Court accepted Defendant's guilty plea and found him guilty as charged. (Id.)

On June 26, 2015, the Court sentenced Meadows to 300 months imprisonment for counts 1–3 & 4–10 and 120 months imprisonment for count 12, to be served concurrently, using the 2014 edition of the Sentencing Guidelines. [Doc. No. 152.] Taking into consideration Defendant's admission of his involvement in the activities and desire to re-pay his victims, Meadows' Presentence Report (PSR) recommended a two-level downward adjustment on his sentence for acceptance of responsibility. This Court and the PSR relied upon the 2014 edition of the Sentencing Guidelines in calculating the recommended sentence as that was the most recent edition of the Guidelines available at sentencing. At sentencing, this Court in its discretion determined not to award the downward adjustment for acceptance of responsibility.

At the sentencing hearing, Defendant knowingly waived his right to appeal based on a potential conflict of interest that had arisen early in the case. In a colloquy with his attorney, Defendant confirmed his knowledge of the conflict of interest:

> MR. LARSEN: Now, at some point in time did I make you aware of a concern expressed by the prosecutor's office, specifically by Benjamin Langner, that you, having given a mortgage in the Payne Avenue property [to me], had created a conflict of interest for my law firm in continuing to represent you?

5

| DEFENDANT: | We've had many conversations about that. I mean, you have brought that up, yes. |
| --- | --- |
| MR. LARSEN: | Okay. And approximately how many times do you think you and I discussed that? |
| DEFENDANT: | Um, 15 maybe, maybe 20. I don't know. It's – we talked about it a lot. |

[Doc. No. 127 (sealed portion) at 6-11.] In a colloquy with the Court, the Defendant verbally waived his right to appeal the sentence on these conflict of interest grounds:

| THE COURT: | So, the question becomes whether, after sentencing today and the retention of your appeal rights, whether you would assert that this proceeding, this sentencing, should be remanded to the Court or reversed because you were not adequately represented by counsel because that counsel had a conflict of interest. That's the question. And if you believe that, then we will get you new counsel and we will proceed with the sentencing and -- quickly, but not today. Do you believe that there is a conflict that you believe necessitates the retention of new counsel? |
| --- | --- |
| DEFENDANT: | Absolutely not. |
| THE COURT: | Okay. So by saying that, then, sir, you are waiving or giving up your right to make that claim in the future. Do you understand that? |
| DEFENDANT: | I wish to give up that right, yes. I understand. |

[Id.]

**B. Direct Appeal and Resentencing**

On July 7, 2015, Defendant filed a direct appeal of his sentence with the Eighth

Circuit Court of Appeals, challenging the Sentencing Guideline enhancements for the use of sophisticated means to commit his offenses and for violating security laws. He also argued his sentence was "substantively unreasonable." [Doc. No. 121.] On appeal, Defendant was represented by appellate counsel Lisa Peralta.

The Court of Appeals did not rule on the merits of Defendant's arguments, but instead remanded the matter for resentencing due to a sentencing calculation error concerning the statutory maximums for mail and wire fraud.

On July 22, 2016 [Doc. No. 186], this Court re-sentenced Defendant to 240 months imprisonment for counts 1-3 & 4-10, in compliance with statutory maximums, and 60 months imprisonment for count 12, to be served consecutively. Meadows again appealed to the Eighth Circuit. [Doc. No. 188]. He re-asserted his challenges to the Sentencing Guideline enhancements for the use of sophisticated means and for violating security laws, arguing that his sentence was substantively unreasonable. The Eighth Circuit affirmed this Court's sentence. [Doc. No. 196.] This § 2255 Motion followed.

### III.   DISCUSSION

#### A.   Standard for Relief

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed

the sentence to vacate, set aside or correct the sentence.

While § 2255 generally affords relief, it is only available in limited circumstances. The Eighth Circuit has held that:

> [r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted). Alternatively, any procedural default can be excused if the defendant is actually innocent. Bousley v. United States, 523 U.S. 614, 622 (1998).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion, "[u]nless the motion and the files of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A petition can be dismissed without a hearing if: "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Engelen v. United States, 68 F.3d 238, 240 (8th Cir.1995) (citations omitted). For the reasons set forth below, the Court finds that no hearing is warranted, as the motion and files conclusively show that Meadows is entitled to no relief.

### B. Ineffective Assistance of Counsel

In his § 2255 Motion, Defendant claims ineffective assistance of counsel as to both his trial and appellate counsel. [Doc. No. 200 at 1.] In order to obtain relief for

ineffective assistance of counsel, Defendant must establish both that his counsel's performance "fell below an objective standard of reasonableness," and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688 (1984). Defendant bears the burden of establishing to a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. Id. This is a "heavy burden," Apfel, 97 F.3d at 1076, requiring a showing that the deficiency in counsel's performance was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. A defendant must show that counsel's errors were not the result of "reasonable professional judgment." Id. at 690. Moreover, a court's review of counsel's performance is highly deferential, and there is a strong presumption of adequate assistance. Id. A defendant must then show that the deficient performance actually prejudiced the outcome of the proceedings. Id. at 687.

Meadows argues that his trial counsel provided ineffective assistance of counsel by: (1) creating a conflict of interest by taking a mortgage out on property involved in the fraud; and (2) assuring him he would receive a 5-7 year sentence if he pleaded guilty. As to his appellate counsel, he argues that she provided ineffective assistance of counsel by: (1) failing to raise and preserve on appeal the conflict of interest claim as to his trial counsel; (2) failing to appeal this Court's denial of points for acceptance of responsibility; (3) failing to procure a new PSR for re-sentencing; and (4) failing to argue at re-sentencing that he was sentenced under an incorrect edition of the Sentencing Guidelines. [Doc. No. 200 at 1.]

1. **Conflict of Interest**

Courts have long recognized that the Sixth Amendment right to counsel encompasses a correlative right to representation that is unimpaired by conflicts of interest or divided loyalties. Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir.1991) (citing Wood v. Georgia, 450 U.S. 261, 271, (1981)). A defendant "may waive his right to the assistance of an attorney unhindered by a conflict of interest[]," so long as he does so knowingly and willingly. United States v. Brekke, 152 F.3d 1042, 1045 (8th Cir. 1998) (quoting Holloway v. Arkansas, 435 U.S. 475, 483 n. 5 (1978)). The trial court must ensure that the Defendant waives this right of his own free will. Id.

In order to validly waive the right to obtain new counsel, free of conflicts of interest, the Defendant "must be aware of the conflict, realize the consequences to his defense that continuing with counsel under the onus of a conflict could have, and also be aware that he has the right to obtain other counsel." United States v. Edelmann, 458 F.3d 791, 807 (8th Cir. 2006) (quoting United States v. Levine, 794 F.2d 1203, 1206 (7th Cir. 1986)). "Because a defendant may waive his right to counsel, the defendant may also waive the right to counsel free from serious conflicts of interest." Id.

Here, after the Government alerted this Court to the potential conflict of interest, the Court engaged in a pre-sentencing exchange with Meadows to ensure that he was aware of the conflict of interest, its consequences, and his right to obtain alternative counsel. [Doc. No. 127 (sealed portion) at 6–11.] During that exchange, Defendant acknowledged that he had engaged in a number of conversations with his attorney over the course of a year regarding the potential conflict of interest. Meadows then

10

unequivocally, verbally waived his right to appeal his case on conflict of interest grounds. [Id.] He demonstrated his understanding of his right to newly appointed counsel and confirmed that he wished to retain his counsel, despite the potential conflict of interest and its consequences. [Id.] As such, this Court finds that Meadows knowingly, willingly, and intelligently waived this ground of relief, rendering his conflict of interest claim moot.

### 2. Guilty Plea

Defendant also contends that his trial counsel was ineffective because of counsel's assurances that Defendant would be sentenced to 5-7 years imprisonment for pleading guilty and foregoing trial. [Doc. No. 200 at 29-36.] Here again, the record at Meadows' change of plea hearing belies his claims. [Doc. No. 71 at 26–27.] The Court and the Government made clear that there was no agreement to a lower sentence in exchange for a guilty plea and Defendant verbally confirmed that he understood. [Id. at 21 and 60–61.] Indeed, Defendant's own counsel confirmed at the change of plea hearing that Meadows could face up to 28 years in prison if this Court chose to apply the Guidelines, as suggested by the Government. [Id.] Because the record refutes any § 2255 claim that trial counsel purportedly guaranteed a shorter sentence in exchange for pleading guilty, this ground of relief fails.

### 3. Appellate Counsel

Defendant argues that his appellate counsel provided ineffective assistance of counsel by (1) failing to raise and preserve on appeal the conflict of interest claim as to his trial counsel; (2) failing to appeal this Court's denial of credit for acceptance of

11

responsibility; (3) failing to procure a new PSR for re-sentencing; and (4) failing to argue at re-sentencing that he was sentenced under an incorrect edition of the Sentencing Guidelines. [Doc. No. 200 at 1.]

First, as to the conflict of interest claim, the Government is correct that a claim of ineffective assistance of counsel due to a conflict of interest should be raised outside of the direct appeal process. Established precedent dictates that a claim such as this necessarily involves information outside of the record and thus is more appropriate in a collateral proceeding than on direct appeal. United States v. Martin, 59 F.3d 767, 771 (8th Cir. 1995). As such, appellate counsel's alleged "failure" to raise this claim was in accord with binding precedent. Thus, this does not form the basis for a claim for ineffective assistance of counsel.

Second, Defendant argues that he received ineffective assistance of counsel when his appellate counsel did not raise on appeal the Court's denial of credit for acceptance of responsibility in the calculation of Meadows' offense level score. In order to challenge a Court's decision not to grant a downward adjustment of the offense level, "[t]he burden is on the defendant to establish entitlement to a downward adjustment for acceptance of responsibility." Peters v. United States, 464 F.3d 811, 812 (8th Cir. 2006). The Sentencing Guidelines explicitly state:

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction . . . will constitute significant evidence of acceptance of responsibility. . . . However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

12

Id. (quoting U.S.S.G. 3E1.1, comment. (n.3)). Thus, the Guidelines leave the determination of whether to award an acceptance of responsibility adjustment to the discretion of the Court.

Here, the PSR suggested that an adjustment for acceptance of responsibility would be appropriate in Meadows' case. However, as evidenced by the numerous colloquies at Defendant's change of plea hearing, Meadows was well aware that his guilty plea did not guarantee a lesser sentence. At re-sentencing, this Court found that Defendant did not exhibit the requisite behavior to justify a downward adjustment for acceptance of responsibility. The Court stated:

> [I]nstead of talking to me today exclusively about the empathy you feel for the victims of your crime, you choose to talk to me about how you've moved on . . . I should be hearing about the gut-wrenching remorse that I would expect from any human being who had committed the crimes that you've committed. Your response is not commensurate to the severity of your crime. You're not there yet. You don't understand the magnitude of what you have done.

[Doc. No. 193 at 20–21.] The Court therefore, in its discretion, found that Meadows' conduct was inconsistent with acceptance of responsibility and declined to make a downward adjustment to the offense level on this basis.

When Defendant's appellate counsel chose not to raise this issue on appeal, she did not render ineffective assistance. The decision to award a credit for acceptance of responsibility is largely at the sentencing judge's discretion and is given great deference unless it is "without foundation." See United States v. Keene, 915 F.2d 1164, 1170; United States v. Rowley, 975 F.2d 1357, 1364. It was well within appellate counsel's

13

"reasonable professional judgment," Strickland, 466 U.S. at 690, to discern that raising the issue on appeal would be unsuccessful. Appellate counsel's decision does not fall below the objective standard of reasonableness for ineffective assistance of counsel as to the issue of acceptance of responsibility.

Third, Defendant claims that his appellate counsel failed to obtain a new PSR prior to re-sentencing. However, as the Government contends, this case was remanded for the narrow purpose of revising the sentence in light of the statutory maximum and determining whether the sentences should run concurrently or consecutively. As such, the substantive facts of the case remained the same as they were presented at the original sentencing. A new PSR on re-sentencing was unwarranted. In light of these circumstances, it was therefore well within the professional judgment of Defendant's appellate counsel to determine that requesting a new PSR at resentencing was unnecessary. This fails to support a claim of ineffective assistance of counsel.

Finally, Defendant contends that he was improperly sentenced under the incorrect edition of the Sentencing Guidelines and his appellate counsel failed to raise this issue at re-sentencing. This challenge necessarily fails. "[T]he court shall apply the guidelines issued by the Sentencing Commission . . . that were in effect on the date of the previous sentencing of the defendant prior to the appeal." 18 U.S.C. § 3742(g)(1). The original sentencing in this case was held on June 26, 2015. The Court sentenced Meadows under the 2014 Sentencing Guidelines, the most recent Guidelines in effect on that date.

## C. Certificate of Appealability

In order to appeal an adverse decision on a § 2255 petition, a petitioner must first

obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A court cannot grant a certificate of appealability unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court has considered whether the issuance of a certificate is appropriate here and finds that no issue raised is "debatable among reasonable jurists." <u>Fleiger v. Delo</u>, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing <u>Lozada v. Deeds</u>, 498 U.S. 430, 432 (1991) (per curiam)). Accordingly, the Court declines to issue a Certificate of Appealability.

## IV. CONCLUSION

1. For the foregoing reasons, this Court denies Defendant's § 2255 motion [Doc. No. 200] in full; and

2. A Certificate of Appealability is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 2, 2019     s/Susan Richard Nelson
                         SUSAN RICHARD NELSON
                         United States District Judge